Good morning, Your Honor. Brian McGowan, for the petitioner Aiden Doherty, made appeals to court. To my left of the council table, Your Honor, is Mr. Jim Byrne and Gary Singh, who represented the respondent in the case below the Immigration Court. Mr. Doherty is behind me with his in-laws as well in the court today. I will try my best to reserve two minutes for rebuttal on this matter. Your Honor, this is an asylum case that claims multiple reversible error, which was heard first before the Board of Immigration Appeals. It is more than anything else about the integrity of an administrative record, as well as the unfortunate consequences of an inadequate and highly selective review of the administrative record. The petitioner, Mr. Doherty, holds Irish and UK nationality, having been born a Catholic in the Northern Ireland city of Derry. He last entered the United States under the provisions of the Visa Waiver Program. That was in 2001. After an encounter with immigration authorities at the Honolulu Airport, he was discovered to be on the no-fly list. He was placed in detention. He was ordered administratively removed, and he was given the opportunity for an asylum only here in the Immigration Court. After nine months in detention, Mr. Doherty was the beneficiary of a grant of asylum and withholding of removal. The asylum from the UK, as well as Ireland, withholding of removal from the UK. Judges there having found that past persecution was well-established on counter-protective grounds and witnessed the incredible. What's important, as well, about the lower court case, lower court hearings, that there were 13 of them, unusual in this business of fast-moving, fast-paced immigration adjudications. There was a record created, as you know, 1,500 pages long, 1,300 of which was created at the trial court below. And that was. . . And when you say the trial court, you mean the Immigration Court. Excuse me, the Immigration Court below. And it was. . . she granted relief, and then it was all reversed by the BIA. That's right. Not all, but some of the. . . The government brought appeal identifying up to ten issues, including the entire litany of bars to asylum. But the court, the BIA, was able to dispose of the case on threshold issues of the authority to apply, one-year bar, and ruled as well on the withholding argument that the government had prevailed in by pundits of evidence to show changed country conditions, making it no longer unsafe or unreasonable for him to relocate. Yeah, isn't this case really about changed conditions? It is. I think that's the strongest case, and I think that's because the record is dedicated primarily and wholeheartedly to a presentation of evidence that made that, in the view of the court, patently clear. The court's decision may not elaborate upon it as satisfactorily as we would like. The government makes quite a deal about that, and perhaps we'll see how rightly. But our point is this, Your Honor. There's 300 to 500 pages of testimony dedicated to the conditions in Northern Ireland as they are occurring today. The respondent, as you know, the petitioner here, as you know, became the target of British government retaliation, had well-founded fear, proven of retaliation from loyalist extremist groups in the Protestant community in Northern Ireland. And what was significant was how conditions since he experienced that persecution and since he'd come to the United States, how conditions had become – how positive aspects of the Irish peace agreement had been rolling back. And there was significant evidence on the record, tremendous testimony on the record, all credited for credibility and relevance, that showed there was significant increased threat in this case. What he had presented to the court was that in 2001, one year and about two months after he had last entered the United States, his brother had been issued with a letter that essentially constituted a placement on the death list. The IA addressed that issue. They did not address, though, all of the conditions of 2005. Well, what I don't understand is he – his whole problems began with his brother, as I understand. With the third brother. The third brother. That's correct. Well, where is that – is that Tony? That's Tony. Tony. Where is Tony now? Tony lives in the North of Ireland. Well, isn't that a problem for you? Because you're saying that it's dangerous for him to go back now and these bad things will happen to him, and yet his brother, who got him into all this trouble, is living in Northern Ireland. I don't think it's dangerous for me, Your Honor, because in looking at the testimony around that, which was quoted by the BIA, I think selectively in a distorting way, the man lives in hiding. The man lives without the ability of free motion, free movement. He had met with our expert witness prior to the expert witness arriving in Hawaii, who described him as a man of great nervousness, untrusting, suspicious, moving about in kind of clandestine ways. He even changed the appointment time to meet this lawyer, who's the lawyer, the expert witness in Northern Ireland, is a very highly regarded, highly respected, trusted member of the bar who's defended members on both sides of the aisle in that conflict. This man does not live an ordinary life, does not live a normal life. But our job wasn't, on the record, to prove what, how he lives. It wasn't our burden at that point, and it was, in our view, not even rebutted with anything that would pass the muster of substantial evidence review in respect to the, say, withholding claim. So your position is that it was the government's burden if it was going to change conditions to show that he was living openly? Change conditions from the point of view of the withholding argument? Yes. Change conditions, change circumstances from the one-year bar exception was entirely our burden, but we showed that the 2005 events and such constituted that changed circumstance. So Tony Daugherty's situation in Ireland is more relevant to the withholding claim. So the board, however, found and reviewed only the records for the letter. That, in our view, was patent error in that they are obligated to do a full record review. They're obligated to address your argument. That, too, on this today. But they're obligated to review the record. And the standard that's employed by the statute in this matter to the satisfaction of the Attorney General has been discussed within board precedence, like the matter of Barreros, and the board has instructed that that requires a reasonable inquiry considering the totality of the factual record and an inquiry in good faith. And I don't think the board lived up to that measure at all. When did you address the withholding claim for the minute or so? The withholding claim, Your Honor, I think on one hand the decision leaves one without the conviction that the proper presumptions were employed by the Board of Immigration Appeals in that having shown past persecution, been credible, he was entitled to that presumption of relocation was unreasonable and future persecution was presumable as well. In that respect, the board, again, went to the record and cherry-picked and simply said, Mr. Daugherty lives fine. Everything's fine in Northern Ireland. Thirteen siblings of which several of them live fine in the UK. Not relevant to this argument because the operation of the threatened, the groups that threatened him, who was uniquely situated as his siblings, was shown to be accredited as nationwide threat. The government didn't produce anything, in fact. What the board did was to look at a few facts, take them out of context, not credit, a host of other facts, and say the government had therefore met its burden by the punishment of evidence. That doesn't hold up to a full review of the record. Well, what's our standard? You could say, you could call it cherry-picking, but if there's evidence, if it's substantial evidence, we have to uphold it. Are you bound here by the standard that the evidence has to compel the opposite? Indeed we are. Indeed we are. And I think you're on a review, on your own independent review, you will be compelled to find that this is not supported by the record. It's two facts, three facts, isolated from a host of facts. The facts found by the board below are compelling. And by the way, the board has well committed legal error by, I believe, not following its own regulation in the matter, in that in several instances of the decision, they did not employ the clear, clearly erroneous standard of review. They simply went themselves to independent review and replaced their judgment for the IJ. This court has the opportunity to bring us back to the full record, to look at in good faith what's provided on the record, and to see that the court in Hawaii, the immigration judge, was correct. All right. You've almost used your time. We'll give you a moment. Thank you. Good morning, Your Honors. May it please the Court. Cori Farrell on behalf of the Attorney General. The petitioner in this case was arrested in 1991 for assisting his brother, an IRA member, in the murder of loyalist Gary Lynch. He remained in custody until 1993 and then stayed in Northern Ireland for four years until 1997 when he entered the United States. Mr. Daugherty's last entry into the United States was in July of 2000. However, he waited over five years until after he was placed in removal proceedings to file his application for asylum. The immigration judge found that Mr. Daugherty was entitled to asylum and withholding of removal despite the one-year bar, and on appeal the board reversed, pretermitting Mr. Daugherty's asylum application for failure to establish change or extraordinary circumstances and finding that he could reasonably relocate. Based on these facts, substantial evidence does not compel reversal of the board's decision to pre- which is, you know, pretty substantial. I mean, this whole case is unique. It is. It's what I've seen in my years of reviewing BIA decisions. It's a substantial record and a grant of relief by the IJ and getting over the one-year bar and then reversal by the BIA. But when I read the BIA's decision, at least on this issue of changed circumstances and the one-year bar, it only looks like she addressed the letter that was sent to the brother. That is correct. It doesn't look to me like she addressed the overall breakdown and the peace accords and what was happening at the time of the hearing. And I just, did I miss something in the board's decision? Or if I did, I'd like you to point to me. No, Your Honor, you didn't. And my understanding in our case law is that, you know, if a party makes an argument, they need to address it. They either got to just blow it out of the water or, you know, say it's got merit or something. And here, you are absolutely correct. The board only looked at the letter for changed circumstances. However, that is the only changed circumstance that the immigration judge relied on when she found that changed circumstances excused the one-year bar. And so the board was only reviewing the immigration judge's decision on that issue and looking at the facts that the immigration judge found to support changed circumstances. Let me ask you, are you saying that Mr. Daugherty, the counsel, didn't raise that particular issue before the immigration judge? Mr. Daugherty never testified that he filed his asylum application in 2005 because of the erosion in the peace process. It was not relied on in the immigration judge's finding. And the immigration judge only mentioned the peace process with regard to the well-founded fear of persecution. That's correct. And so this was not an issue for changed circumstances. And so when the board reviewed the immigration judge's decision on changed circumstances, it only looked at the factual basis for her finding, which was only the letter. And as to withholding, the board here found that Mr. Daugherty could reasonably relocate based on the fact that his brother, Tony, who is very similarly situated, continues to remain not even just within the entire U.K., but in Northern Ireland. Let me ask you this. So he starts out with a presumption because it was a finding of past persecution that wasn't disturbed. That's correct. So he begins the withholding issue or the claim for relief on the basis of withholding with the presumption of future persecution and that he can't relocate. So the agency has to come back and rebut that. Right. My understanding under the regulations is a two-part test. One is a safety issue. The other is overall just reasonable. And it looks like from when I reviewed their decision that they dealt with the safety issue but not addressing all the factors that would go into the reasonableness calculation. That issue was not raised on appeal and the reasonableness of relocation, so it has been waived. When you say an appeal to? To this court. To this court. That the board did or did not address reasonableness. But the board looked at the totality of the relocation and found that it would be reasonable for him to do so under the circumstances. I'm not sure if they used the reasonableness words, but they did look at Tony living in Northern Ireland. There's no evidence that he was harmed or threatened, let alone persecuted. Was he living and hiding? He was living cautiously was the testimony. We don't have any information that he was actually in hiding. And relocation is, in this case, within the entire United Kingdom, not only within Northern Ireland. Are there no further questions? Thank you. Thank you so much. A moment, Your Honor. As far as the board's review of the IJA's opinion, of course the board, the IJA's opinion does not memorialize the proceedings in a way that subverts or trumps the record. The BIA was bound to the record and should have searched that record under precedent in this court for anything contradicting what its view might be in respect to. Well, the government just told us that you didn't raise. And that's not the case. Unchanged circumstances, you didn't raise as a basis the overall breakdown, the overall conditions at the time. I think what was said was the reasonable relocation. What she said was, though the safety was one of the issues which was raised and that the board had effectively discussed that, but that you did not raise before us the reasonableness of the relocation. Indeed, that is raised. Where in your brief does it say reasonableness of relocation? In the final argument of the brief, Your Honor, I can't quote this moment, the page, but in the final argument of the brief we raised the fact that the presumptions applied to both safety, excuse me, well-founded future persecution as well as reasonableness and that neither of those presumptions were either diligently or with fidelity used by the court, nor did the government meet proponents of evidence test to contradict those presumptions, to rebut presumptions. Your Honor, she asked about changed circumstances in the one-year bar. Correct. She said that you didn't advance that argument to the IJ, and so therefore the IJ didn't have to address it. What's your response to that? The asylum application itself, the final statement of the declaration attached, raises that very issue. It raises the very issue. Ceasefire breaks down 150 REC Royal Ulster Conservatory letters in recent times. It raises it right there in the asylum application, the very first filing in the case. The evidence was presented. We do not believe we had a case of, we believe that past persecution would be found, credibility would be found, that presumptions and withholding would work for us. The 600 pages of record evidence only makes sense. You knew you had to get up at the one-year bar. Indeed. Indeed, and that's why the evidence, that's why the record is as strong as it is. The judge may not have relied upon it in her written decision. That can alone not be said, cannot be rested upon to say that the petitioner didn't rely upon it. In your brief to the BIA, did you raise this particular issue with respect to changed circumstances? Right up. Right up. Right up. You've missed arguably the most significant factor, because with the credit of that factor, the reasonableness analysis utterly changes. The time delay analysis utterly changes. Rather than a four-year wait, you have a wait almost concurrent. The evidence supporting the changed circumstances or changed conditions is what exactly? Is it the monetary commission? The fact that the letter hadn't been received by her brother, and, yes, the International Monetary Commission reports and State Department reports designating these groups anew as terrorist threats, identifying splinter groups newly arisen in Ireland as well from the splinter groups from the group that threatened Mr. Daugherty. Thank you. Thank you. The case just argued is submitted for decision. We'll hear the next case, which is United States v. Manning.
judges: Schroeder, Paez, Smith